Call the next case please. Case number 10-2518, People v. Darius Roman. Counsel would please identify themselves for the record. Laura Weisberg, Office of the State Appellate Defender for the Appellant Defendant Darius Roman. I'm John Walters. I represent the people of the State of Illinois in the matter before you. All right. Thank you. Welcome to you both. And thank you for your patience. Ms. Weisberg. Good morning, Your Honors. May it please the Court. The question before the trial court in this case was whether the defendant, Appellant Darius Roman, acted in self-defense or whether he committed aggravated battery when he stabbed Angel Torres. And before I forget, I would like to reserve two minutes for rebuttal. The problem in this case was that the court allowed improper and highly prejudicial testimony involving the actions of the defendant's girlfriend, Janessa Gonzalez, and his mother, Jeanette Roman, involving their actions, their discovery of a knife, the transfer of that knife, and the loss of the knife. The girlfriend's and the mother's actions. If the judge had not indicated some reliance on that testimony, would you still be arguing that point? Certainly the judge's reliance on that, on their actions, made our argument more supported in this case. But the defense counsel in the case also made numerous objections that were overruled by the trial judge on grounds that this testimony was irrelevant, beyond the scope, cumulative, and those were all overruled. But if that was chiefly considered for impact on the bias of his girlfriend and his mother, what real harm does that do? I mean, isn't it admissible for that? The harm in this case is that it became a focus of the trial. Two-thirds of the cross-examination of the mother involved her actions. Was there any question here about the defendant's possession and use of a pocket knife? There was no question. He admitted that he used the knife, except in self-defense. Now, in that case, the jury's fixation on the parent and the girlfriend's conduct when they found the knife, where does that lead to? You mean the trial judge? No, yeah, yeah. The trial, the trier effect. Yeah. That's the problem with it. That makes it even more tenuous, obviously, because as a trier effect, he has the Nokia presumption, you know, that he's not going to be seduced by evidence that has little value. Correct. There is a presumption there. Except where he identifies it as such. So it's not, but that doesn't mean that we have to assume that he was romanced, to follow the same analogy, same metaphor, by the fact that there was a pocket knife here, as opposed to the impact that it had on his credibility call with respect to the mother and the girlfriend. And if he's going to be impact, if it's going to be a credibility call, where is the reversible error? As you stated, Your Honor, there was no question that there was a knife used. The defendant admitted that he stabbed Angel Torre, and he admitted he did it with a pocket knife he bought at a corner store. The judge in this case said on the record, his girlfriend recovers the knife, she doesn't turn the knife over to the police. She calls the mother of the defendant and turns the knife over to her, who she loses the knife. So I don't buy his defense. The judge explicitly stated this on the record. He didn't say, because of the girlfriend's and the mother's actions, he finds their testimony incredible. He says, because of their actions, he rejects the defendant's claim of self-defense. If you take the, and clearly it's an inartfully expressed thought, but couldn't that just as easily be referring to the fact that the testimony of the other witnesses, which is part of his defense, they are defense witnesses, is impeached by the fact that they concealed and helped to conceal the weapon. That he didn't see them as more forthcoming, more objective than they would have had they turned it over, or at least not been part and parcel of the concealment of the weapon. Well, I'm going to pick up your argument a little bit, because I think it bears being explicitly laid on the table so that the State can respond to it. If I take it, your argument in its extrapolation would be that the judge may have speculated here about the intimate knowledge of the mother and the girlfriend of what actually happened, and that if they were motivated to conceal the knife, it must denote that somehow they were under the impression that the knife that Darius acted improperly in his use of the knife, and that therefore somehow that knife warranted concealment. Am I shortchanging your argument in its full articulation? I would agree, Your Honor, that that is the danger of admitting this testimony, that it infused the defendant. Okay. So that lends itself now to an analysis of how speculative that may be, and to what extent we are either permitted or compelled to entertain that speculation. I would also state that there definitely is a worry that it infused the defendant, but even if the court solely rejected his defense because of the impeachments of the girlfriend and the mother, we would argue because this is a closely balanced case and there was no or very little physical evidence to corroborate either version of the story presented to the court, that because this testimony came in, it made a difference in the outcome, whether or not the actions were impute to the defendant. Did the judge in this case specifically say at some point in his findings, I didn't believe her? Yes. Yes, he did state that he did not believe Janessa. Okay. So that could be an interpretation that Justice Epstein was referring to earlier. He certainly said on the record that he did not believe the testimony of that girlfriend, but he also stated that he didn't buy the defendant's claim of self-defense because of the girlfriend's and the mother's actions. Well, I'm also going to, I think if you bear with me, I'm going to postulate the other issue in this case, albeit that it's in the first portion of your argument that you're choosing not to pursue. But that argument would be that we have a gentleman, Torres, admits to buying and treating himself to three beers before he gets there, being in an adjoining place, far outweighing this defendant, intervening in what's happening at a neighbor's house, pursuing the defendant in this case after he left the house, engaging him in a violent act for something that really was not technically his business, albeit he claimed to be a friend of the house, and then stating that he turned around and walked back and happened to fall, which would either indicate a lack of sobriety, a possible lack of sobriety, or an attempt to cure an event with testimony, and that the defendant chose to return back and become the aggressor again. You know, it's a call, and I can't rewrite what the trial judge did here, so to speak, nor do I necessarily say I want to, nor can I say that the other side of this is invulnerable to skepticism, and probably the truth here lies somewhere in between the two testimonies. So with that in the picture, I think I carefully thought about whether I was going to make this articulation here or let you folks just do it on your own, and I thought we should plant it on the table and see what you do with it. I agree, Your Honor. It's definitely a closely balanced case, and as I noted, the two versions that Angel Torres and Darius Roman gave have little corroboration with any physical evidence. We would submit to the court that Angel Torres' version of events is contrary to human experience and highly improbable. His testimony was that he charged down the steps, went outside the gate at property, pursued the 18-year-old defendant who was, as you noted, 50 pounds lighter and substantially shorter than him, quickly escalated events from yelling at him to punching him, and then he suddenly turned and left. It seems that if he was that enraged, it would not have been a sudden decision. But isn't that the judge's call? Certainly, credibility is the judge's determination, but when it is so improbable or implausible to believe, the reviewing court... How improbable is it? Also, as I would note, he was stabbed on the back, and his testimony is that he fell. He turned, fell, was laying on his back, and then the defendant, Darius, came and stabbed him. Well, where were the injuries when he testified? The injuries were to his left back and to his left tricep. So doesn't that corroborate what he said? Well, he said he was laying on his back. Yeah. So I think it might be difficult to stab someone on the back while they're laying on it. It depends on where the wound is. It depends on whether he means flat on his back or on his back as opposed to being on his chest. I mean, you know, of such nuances, the judge would be the best judge. That is true that the judge has the credibility determination. Didn't Torres suggest that he was trying to get away from the knife when he testified? Torres' testimony was that he slipped and fell, and then he was completely at the mercy of Darius. The other witnesses also testified that Darius and Angel Torres were on the corner of Albany and School Streets the entire time from the first punch through the end. They were entangled wrestling Daisy Torres, who is Angel Torres' wife. Each of the parties here professed in their testimony that in the face of violence, they managed to maintain a highly civil tongue in addressing the other. I don't remember the record stating that, but they certainly were expletives thrown around. According to each person, the expletives were only from the other side, not unusually in these recitations of such acts. Emotions were certainly high during this encounter, and I think everyone who testified agreed to that, which is why we find it highly unlikely that Angel Torres would come down charging, leave the private property to confront Darius Roman while he's waiting for his mom on the street corner, punch him, and then suddenly turn to leave. And the problem in this case is that the court relied on the actions of the defendant's girlfriend and the mother to make the determination of whether he acted in self-defense. Or, alternatively, to choose to reject their version. Even if the court rejected their version, you still have Angel Torres' account and Darius Roman's account, which, as the court said, were different in substantial respects. But if you're talking about the impact of this purported admission of the post-act hiding of the weapon, if you assume that it's totally improper, which is a leap, even so, if the impact is limited to his rejection of their testimony, the two women's testimony, it's at least admissible as to that. Their post-act or post-stabbing acts could certainly be used to impeach their credibility. The problem in this case would be that their bias was already established by their relationship with their defense counsel. So you can't add any additional biases? Because you know that the argument of the defense counsel is going to be, yeah, it's undeniable that they have this relationship, but they are telling the truth because they're honorable people  The answer to that being, oh, really? Then why didn't they turn over the knife rather than conspire to hide it? The relationship was testified to. They clearly said that they cared for the defendant and didn't want anything bad to happen to him. The testimony concerning the knife, which became a focus of the trial, and again, it was two-thirds of Jeanette Roman's cross-examination and nearly half of Janessa Gonzalez's cross-examination, and the judge stated on the record that he didn't buy the defense claim of self-defense because of their actions, was more than what you would expect in this case. The issue here is, is there enough of a record of what this judge said to overcome the presumption that he intended and acted in the most proper manner, postured by the alternative interpretations that one could give to his statement? Under People v. Lee, the factors for self-defense that were relevant in this case were whether Darius Roman felt he was in danger,  and whether Angel Torres remained the initial aggressor or retreated. The court in this case focused on the actions of the defendant's girlfriend and mother, which did not make any of those factors more or less likely. Anything further? I would just like to conclude by saying that, as you noted, this was a closely balanced case. Emotions were high, and there was little physical evidence to corroborate either versions of events. The fact that the court focused on the highly prejudicial and improper testimony of the defendant's girlfriend and mother, of actions that happened surrounding the night, well after the event, and with no evidence of knowledge or involvement on the defendant, deprived the defendant of his right to a fair trial. And we ask that the court reverse his conviction or demand for a new fair trial where his guilt and innocence is determined on legal and competent facts. Thank you. Thank you very much. Mr. Welch? May it please the Court, with respect to the second issue, I want to delve right into the fact that there's no question that this evidence regarding the witness's actions with the knife comes in as evidence of going to bias interests and their motive to testify. No question about that. And I think Your Honors... Why is that? Well, aside from the fact that that's your sincere belief. Beyond my sincere belief, if the shoe were on the other foot, say that the State had lost or misplaced evidence, would that not be an issue that would be relevant to the trial? It's a kind of awkward articulation for being a credibility call on the part of the judge. It doesn't quite limit it to his statement, at least, as articulated through the credibility of the witnesses, but rather relates it to the ultimate spin given to the entire event. That actually is not true. If you have the record in front of you, I'd like to prove to you how that's wrong. I'll trust your appraisal of the record. Well, let me go right to the record, because the whole argument that defendants made is predicated on this sort of link to, I don't buy this defense to this particular piece of evidence, right? Don't engage me there. Okay, okay. Well, I just want to make a point. Read what you want to read. Right. Get to it, as they say. In the paragraph even preceding that series of findings, and this is page F-169 going into F-170 in the record. Come on, counsel, get to it already, okay? I just sold it so that you and your law clerks can go to exactly what I'm going to say, because this is pretty crucial. Good buildup. Get to the point. The judge goes through a whole series of findings. I want to interrupt you. I've been sitting up here for 13 years. I've never heard a remark like that before that you and your law clerks can get to. Never. Not once. I don't know what that meant, but whatever. I'm just pointing it out. I've never heard that kind of remark here in any setting for all the oral arguments that I've heard. So let's hear what the judge said. Just read the colloquy, will you, please? Certainly, Your Honor. At page 1-F69, the judge goes through his findings of fact in the case, and he's not talking at all about the knife at this point. Just read the colloquy. Okay. I'll read it to you. Or hand it to us and send back. Yes, Your Honor. A person is justified in the use of force which is intended or likely to cause death or great bodily harm since he did produce a knife, his knife, only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself. I'm confused by the defense in that at one point it's argued that here's an older man, taller, and weighs 50 more pounds than this 18-year-old 5'2", 130-pound, soaking wet person. And then in the same argument, that if he wanted to, he could have disabled this drunk old man by making a more lethal strike with the knife. Now, that does not sound to me as if the person reasonably believed that this was necessary to prevent imminent death or great bodily harm. I don't buy his self-defense. That's the end of that paragraph. Then he goes on and he says he leaves the knife on the scene. He flees the scene. He doesn't go to the police. Now we're going to get to the knife. His girlfriend recovers the knife. She doesn't turn the knife over to the police. She calls the mother of the defendant, turns the knife over to her, and she loses the knife. So I don't buy his defense. So this I don't buy his self-defense is not linked solely to a credibility determination. It's not linked solely to actions with respect to the knife. It's something that it's almost a formula, a mantra that he's saying as he goes through these paragraphs depicting the summation of the facts in the case. And, Justice McBride, I meant no disrespect at all. I just meant that I wanted to zero in on these particular pages because that eliminates any link to this finding being based on just one point. You point out in your brief that the judge said he did not specifically believe Ms. Gonzalez. There's also that that's in there, too. Yes. Yes, Your Honor, that is. But it's just with respect to that one particular witness, not both of them. Yes. And it was with respect to certain things that were very specific about her testimony, about how there was this whole brouhaha brewing in her own apartment and that, according to her testimony, the victim in this case just suddenly shows up, just appears out of nowhere. Does it matter how much time they spent trying to diminish the credibility of this Ms. Gonzalez and Mrs. Torres? I mean, isn't the State entitled to hammer home what they think makes a person biased, prejudiced, or interested in the outcome? Yes, Your Honor. So whether they spent two-thirds of the cross or not on this, the State was entitled to hammer home what they believed would show that the witness did have a biased interest or reason to testify in a particular way. Isn't the statement that you just read indicative that the comments about what the witnesses did with the knife is at best a non-sequitur? No, I don't think it's indicative that it's a non-sequitur. I think it's indicative of, as I said before, the Court is going through all the evidence in the case. Well, then what does he mean by that statement, if not what? How does that portion of the record enlighten us as to where the judge was going with that statement in revealing his judgmental state of mind? I think it was that he had gone through, in particular, attacking certain defense theories that had been raised. In the paragraph preceding that, he dealt with the particular defense theory that, on the one hand, this guy is bigger than me and he's attacking me, so he's clearly the aggressor. But by the same token, he's a drunk old man, and I could have heard him worse. How does his comment about the conduct of the mother and girlfriend with respect to the knife fit into the sequence of his comments that you just read out to us, aside from the possibilities that we've already discussed when your opponent was up there? As I said, the defense came out with certain theories. The Court is, one by one, destroying certain of those theories. So one of those theories was this theory about the confrontation and the sizes. Well, but doesn't that fit within the interpretation that your opponent would prefer for us to believe, namely, that the judge was using the conduct of these witnesses as an insight into the truth of the defendant's version? There's nothing, first of all, explicit that would support that interpretation, and second of all, again, it lines up with what I just said. How is that interpretation disturbed or dissipated, as you earlier indicated, by what you read? Because he's going through the various pieces of evidence and theories that the defendant has raised to support his claim of self-defense, and he's knocking down each one. So what's he knocking down with this statement other than what he says he's knocking down? And the question is, what is he saying he's knocking down? Is he knocking down the testimony of these witnesses, or is he knocking down the version of the defendant? Well, the two are tied. I mean, those witnesses are testifying to his version of the defense. Then doesn't your opponent prevail? Because can the judge speculate through the conduct of these witnesses as to whether the defendant is telling the truth? How does he get there? I want to argue this on two levels. I believe that the court is pretty clear. I'm trying to answer it. But I think it bears answering on two levels. I think the record is what it is. It says what it says. The court is pretty clear that he's going through decimating the defendant's positions, the evidence that the defendant presented. But even assuming, if you will, assuming that this was used for more than just mere credibility, I would argue that this evidence was still admissible. There are a number of ties to this particular instrumentality of this crime, this knife, to the defendant in this case, both before and after the knife was fired. So is your argument that if, though his girlfriend and his mother hid the knife, that somehow it makes the defendant's version less believable? Assuming it impacts on his credibility? How much more is he projecting into the testimony of the mother and the girlfriend in coming to that conclusion? And is that projection of unspoken statements something that really vindicates your opponent's position, that this judge is engaging in speculation and promising his decision on that speculation? What I'm attempting to do here is simply offer and fall that position to, if you disagree with me with respect to the judge's interpretation. Well, I think you should fall all the way back on that one. But let me flesh this out. Because, Your Honor, just Epstein, it's more than just what these two witnesses did. Now, keep in mind what defendant's response right after this crime was to flee. And then, very interestingly, to suggest- But he was leaving beforehand, wasn't he? When Mr. Torres came out of the apartment, the house, and confronted him. It wasn't like he was settled down for an evening and suddenly after this he wants to run away. He was waiting for his mother to come pick him up in the first place. That's true. That's true. So where's the flight? Where's the- Well, the confrontation changed in nature, though, didn't it? Originally, the victim came down and confronted the defendant about what had happened upstairs in the apartment. And there was even a physical exchange. The victim hit the defendant. But there was a change in that confrontation. The victim's testimony is that he walked away from that. And that the defendant then attacked him. Now, the victim's version, my opponent talked about corroboration. This is a very important point. The victim's testimony is the only testimony in this case that's corroborated. The victim said that he was stabbed twice. He's the only person to say he was stabbed twice. He said he was stabbed in the arm and in the back. Now, being stabbed in the back is not generally indicative of self-defense. And what's important about that, what's a tell in this case, Justice Epstein, it's more important than that is that the defendant denied that. The defendant denied stabbing him in the back. So where's the self-defense in this case? There's no self-defense. There's no justification. How does this tie into the argument about the use of the testimony regarding the secretion of the knife after the fact? It ties in it in two ways. One would be sort of with respect to a harmless error, that the evidence was pretty strong here actually with respect to- You're not going to claim that this is overwhelming evidence. I wouldn't use the word overwhelming. That's not how I would describe it, but I would say that- Wouldn't you say it was closely balanced? No, I would disagree with that. Because whoever's-I mean, you have a guy here who you keep calling the victim who initiated the contact and initiated the physical blows and struck first and then lost.  and come to his findings as to who was at fault criminally under these circumstances. But to characterize this as a strong, overwhelming case in any way is really contrary to the experience of most people who have been doing criminal law. Well, I'm being careful- I don't think anybody would be rushing to volunteer to try this case as a prosecutor because it was a strong case. I'm being careful not to use the word overwhelming, but there's different ways that evidence could be non-prejudicial, not just looking at the strength of the case one way or the other. If this evidence was taken as impeaching the testimony of the defendant himself, wouldn't that be a problem? Arguably. Arguably, it does tie to the defendant in this case. It's not just the- That's what we're trying to figure out, what your theory is, if you really want to make that argument. Only as a fallback position. It's not my primary argument to you. Didn't the mother and the girlfriend basically say that he didn't know about this, the knife thing? Is there any suggestion that he had any idea what they were doing with the knife? Actually, there's nothing explicit either way. How about implicit? There is something implicit. Where does it say that they even shared that information with him? It's implicit in two ways. One is, after the flight, this is what I was really trying to get to. After the flight, his suggestion to his mother is not that they go to the police because they're so frightened of what the victim did to him. His suggestion is that they call to the scene. They call and find out what happened. He's left his knife there. Now he wants to make a phone call to find out what happened. That's number one. Number two, when the defendant's mother is supposedly looking for the knife, she says she's lost. And she's supposedly looking for it to give it to the police. She tells the defendant's brother to go look in his room. That's an indication, an implicit indication, that she thought the defendant may have gotten the knife back. So there are factors, there are facts and evidence that would suggest that he was aware of what happened in this case. Again, I don't offer this as my primary position. My primary position is that the court looked at this in terms of the credibility of these witnesses. Anything else? Simply, Your Honor, that we respectfully request that this court affirm the defendant's convictions in this case. Thank you. Any rebuttals? As Your Honors have noted, the problem in this case is that this evidence was admitted substantively and for impeachment purposes. And we would... Where does that... I mean, you're extrapolating from that one quote, one sentence by the judge as part of his overall summary, that somehow he considered that as something other than impeachment? I would submit that the State elicited the testimony to impugn the defendant and that was the purpose for it. In addition to impeaching... Where is that coming from? From the point of view that the State has argued that it showed a consciousness of guilt. And whatever the State's theory was, if the judge thought it was admissible for purposes of impeaching the other witnesses by their post-crime or post-stabbing actions, whatever the State was intending, the judge is presumed to consider only competent evidence. And if that's the case, you're really hinging on that one sentence as an example or as the sole proof that the judge didn't consider it for purposes of impeachment but somehow held that against the defendant's credibility right there. Yes. And we would submit that it's not just that sentence. As counsel read, the fact that the knife played an important role in this case was interspersed throughout his comments. It was not just that one sentence. And he said on the record several times that because of the actions involving the knife, the fact that the defendant fled the scene, didn't pick up the knife, that his mother and girlfriend went back, discovered the knife, transferred the knife, and then lost the knife, that he doesn't buy his claim of self-defense, that he rejects it. That's your characterization? He said those. I do not believe that's a characterization. Basically, your contention is that if the defendant were the one who hid the knife, it would be relevant towards his guilt or innocence in this case somehow. And that the state, in bringing that out through the mother and the girlfriend, were basically attempting to impute that conduct to the defendant. Is that what you're saying? I would say yes, that the state is trying to impute their conduct to the defendant. And the question is, how firm does that evidence have to be before we could make that, draw that imputation without being ourselves speculative? Let me make sure I have the question right. You want to know how much evidence there needs to be before you can impute it to the defendant? No, how much evidence there has to be, how much evidence we have to see before we could engage in that spin that you're hopeful, or that you seem to be postulating, without ourselves engaging in speculation? I'm still not sure I have this, but let me try. Are there people v. Morgan and people v. Lucas? What case law do you have that comes close to permitting us to make that kind of inference so as to overturn ordinarily the province of the trier effect engaging in making determinations of credibility and in following the law? Under people v. Morgan, people v. Lucas, and people v. Easley, the Illinois Supreme Court held that actions of the defendant's close associates and family members cannot be imputed to the defendant. Yeah, but there the imputation was clear. In this case, to conclude that there was an attempt to impute, or that the judge bought into it, would require speculation on our part. I think we're mixing two concepts. We're not really asking you to respond to Mr. Walter's, quote, fallback position, end quote. We're really saying what quantum of evidence do we need that the judge actually considered this as affecting the credibility of the defendant and his testimony as opposed to the other witnesses who were actually engaged in the conduct of hiding the knife? Under the standard of review, the abuse of discretion, if it appears that the judge's decision was arbitrary or unreasonable or fanciful, this Court has to respond. Yeah, but it takes some hard evidence for that. As opposed to evidence that at best lends itself to speculative kinds of interpretation. That word speculative is a barrier in our ruling, but it's not a pejorative. It doesn't mean that it's without any basis in common sense or what. If the question is, to what extent is it something that effectuates a preponderance call or whatever the burden of proof is. Certainly, in this case, if the judge relied on the evidence of the defendant's mother and girlfriend involving the knife and impugned those actions to the defendant, his decision was arbitrary and unreasonable. And I believe you're asking me, how do you know if he relied on that? Well, you have to pick between two versions of the event. The versions of the event were not foreclosed. There may be a difference of opinion, and we've often, and I'm not saying that this is necessarily the case here one way or another, we've often affirmed discretionary calls where we may have ourselves exercised our discretion the other way. And I'm not going to speculate in this case because I wasn't there as to what I would do. But it's not a situation where the judge clearly from the record had no rational basis whatsoever to make the call that he did. On the record, this was a closely balanced case. There is two versions of events that were given. There's little physical evidence corroborated either. All of the witnesses who testified had a bias. They were either related to the defendant or to the complaining witness. In this case, the court made its decision on the record considering the testimony of the mother and the girlfriend regarding their actions involving the knife. He did not make a record that had no mention of that. It is on there that he said because of the girlfriend picking up the knife, giving it to the mother, her losing it, I don't buy his defense. He also said that he didn't find the girlfriend credible. That is true, and I'm certainly not going to say that that didn't happen. But it would be hard to say in this case that the judge made no reliance on the testimony regarding the knife when he mentioned it several times. Thank you very much. Thank you. We'll issue a ruling in due course. Thank you.